UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANTHONY J. CEPARANO,

                Plaintiff,

       -against-

SUFFOLK COUNTY DEPT. OF HEALTH,
S.C.C.F. MEDICAL UNIT, DEPT. OF HEALTH
COMM. HUMAYUN CHAUNDRY, S.C.C.F. CHIEF
ADAM VINCENT GERACI, DOCTOR "IGOR,"
DR. PRENTISS, NURSE PRACTITIONER ALICE,
NURSE PRACTITIONER "JANE DOE,"
DRUG/ALCOHOL COUNSELOR ELIANA, NURSE
"JAMES DOE" LPN,

                Defendants.
----------------------------------------------------------------X

**ORDER**
09-CV-0558 (SJF)(AKT)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    DEC 04 2013    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On February 6, 2009, plaintiff Anthony J. Ceparano ("plaintiff") commenced this action against the Suffolk County Department of Health, Suffolk County Correctional Facility Medical Unit, Suffolk County Department of Health Commissioner Humayun Chaundry, Suffolk County Correctional Facility Chief ADM Vincent Geraci, Doctor "Igor," Dr. Prentiss, Nurse Practitioner Alice,[1] Nurse Practitioner "Jane Doe," Drug/Alcohol Counselor Eliana, and Nurse "James Doe" LPN, alleging that he received inadequate medical treatment while incarcerated at the Suffolk County Correctional Facility ("S.C.C.F.") in violation of 42 U.S.C. § 1983 ("Section 1983").

On May 21, 2009, plaintiff moved for judgment on the pleadings pursuant to

---

[1]      Upon remand by the United States Court of Appeals for the Second Circuit, Nurse Alice was identified as Nurse Practitioner Alice Butkos ("Butkos").

1

Federal Rule of Civil Procedure 12(c).[2] [Docket Entry No. 34]. On July 13, 2010, this Court issued an order denying, *inter alia*, plaintiff's motion for judgment on the pleadings and dismissing plaintiff's complaint *sua sponte* with leave to file an amended complaint. [Docket Entry No. 82]. On September 15, 2010, this Court dismissed plaintiff's complaint with prejudice for failure to timely file an amended complaint. [Docket Entry No. 93]. The dismissal was affirmed by the United States Court of Appeals for the Second Circuit except as to the claims against Butkos and the County of Suffolk ("the County," together with Butkos, "defendants"), which were remanded for further proceedings. Now before the Court is defendants' motion for summary judgment.[3] For the reasons that follow, defendants' motion is GRANTED.

I.  Background[4]

On August 27, 1997, plaintiff underwent laminectomy surgery to correct a herniated disc. (Pl.' 56.1 Stmt. ¶ 55; Wityk Decl., Ex. J at P00000457). On April 4, 1998,

---

[2] Plaintiff's motion was denied for failure to comply with Rule 4 of Judge Feuerstein's Individual Rules. [Docket Entry No. 41]. Plaintiff refiled his motion for judgment on the pleadings on June 16, 2009. [Docket Entry No. 44]. On June 22, 2009, plaintiff's motion was referred to the Honorable Magistrate Judge A. Kathleen Tomlinson. On March 25, 2010, Magistrate Judge Tomlinson issued a report and recommendation that, *inter alia*, plaintiff's motion for judgment on the pleadings be denied and that plaintiff's Section 1983 claims against Dr. "Igor," Dr. Prentiss, Nurse Practitioner "Alice," Drug/Alcohol Counselor "Eliana," and Nurse Practitioner "Jane Doe" be dismissed *sua sponte* for failing to "state a plausible Section 1983 claim for inadequate medical treatment." [Docket Entry No. 61, at 25]. On May 10, 2010, plaintiff filed objections to Judge Tomlinson's report. [Docket Entry No. 70].

[3] At one point, plaintiff was represented by counsel who was subsequently relieved. [Docket Entry Nos. 60, 103]. On August 17, 2010, plaintiff filed a *pro se* notice of appeal from this Court's dismissal of his complaint, which the Second Circuit deemed filed as of September 20, 2010, the date that the judgment was entered. On May 5, 2011, appellate counsel for plaintiff was appointed. Paul, Weiss, Rifkind, Wharton & Garrison LLP filed a notice of appearance in this action on March 11, 2013 and continues to represent plaintiff in opposing defendants' summary judgment motion. [Docket Entry No. 116].

[4] The Facts are taken from the undisputed assertions in defendants' Statement Pursuant to Local Rule 56.1 ("Defs.' 56.1 Stmt."), plaintiffs' Responses to Defendants' Statement Pursuant to Local Rule 56.1 and Counterstatement of Undisputed Facts ("Pl.' 56.1 Stmt."), and my review of the record.

2

plaintiff was diagnosed with "degenerative disc disease," "a painful and debilitating spinal condition" that "has resulted in five herniated discs over the course of the past sixteen years." (Wityk Decl., Ex. A ["Ceparano Aff."], ¶ 2). On July 13, 1998, plaintiff was involved in a motor vehicle accident, in which he "was hit from behind by [a] truck, injuring [his] low [sic] back, neck and shoulder." (Wityk Decl., Ex. E; Pl.' 56.1 Stmt. ¶ 56).

In 2002, plaintiff was diagnosed by Dr. Sebastian Lattuga of Orlin & Cohen Orthopedic Associates, LLP ("Orlin & Cohen") with cervical and lumbar radiculopathy (spinal nerve pain) and herniated nucleus pulposus, in addition to degenerative disc disease. (Pl.' 56.1 Stmt. ¶ 58). Despite advice by his treating physicians, plaintiff repeatedly declined to have surgery, opting instead for pain management through medication and physical therapy. (Wityk Decl., Ex. G; Pl.' 56.1 Stmt. ¶ 62).[5]

On September 1, 2005, Dr. Michael Shapiro of Orlin & Cohen recommended that plaintiff undergo disc replacement surgery. (Pl.' 56.1 Stmt. ¶ 62). Plaintiff was initially hesitant, but ultimately agreed to undergo surgery. (Id.). The State Insurance Fund authorized the disc replacement surgery in November 2005. (Id.). Plaintiff was briefly incarcerated in 2006 and apparently never sought the authorized surgery upon his release. (Id.).

Following his release in 2006, Dr. Shapiro recommended that plaintiff undergo

---

[5] On August 22, 2002, Dr. Lattuga noted that plaintiff "may need surgery in the future," but "does not want surgical intervention at this time," and that plaintiff asked "for stronger pain medications" and "was given a prescription for Vicodin E.S. instead of Vicodin." (Wityk Decl., Ex G. at P00000363). On March 27, 2003, Dr. Victor Katz of Orlin & Cohen reported that plaintiff was advised by Dr. Lattuga "that he was a candidate for multi-level cervical fusion," but again, plaintiff declined to have surgery. (Id. at P00000365). On May 19, 2003, Dr. Katz noted that plaintiff "is not interested in any type of surgical intervention" and "should continue with the pain medication," referring plaintiff for pain management. (Id. at P00000366). On June 16, 2003, plaintiff met again with Dr. Katz, who "recommended surgery for his cervical spine" and noted plaintiff "may also be a candidate for lumbar compression and fusion at two levels from L4 to S1," but plaintiff "is not interested and would like to continue conservative treatment." (Id. at P00000369-70). On June 3, 2004, Dr. Katz renewed plaintiff's prescription for "Vicodin ES up to 4 times per day" and "Soma up to 3 times per day." (Id. at P00000381).

lumbar fusion surgery, as opposed to his first recommendation that plaintiff undergo disc replacement surgery, and prescribed six Vicodin HP per day, as well as Stadol. (*Id.* at ¶ 63).[6] Although on April 16, 2007, Dr. Alan J. Zimmerman conducted an independent medical examination of plaintiff and concluded that "lumbar fusion is medically necessary," plaintiff has provided no documentation that lumbar fusion surgery was actually authorized by the State Insurance Fund. (*Id.*).

On June 5, 2007, plaintiff injured his pelvis and shattered his right femur in another vehicular accident. (Pl.' 56.1 Stmt. ¶¶ 1, 64-65). Dr. Richard Rogachefsky performed emergency surgery on plaintiff's femur. (*Id.* at ¶ 2; Ceparano Aff. ¶ 14). Plaintiff remained in the hospital for approximately two (2) weeks following the surgery and was incarcerated on September 17, 2007 for two (2) years as a result of his involvement in this accident.[7] (Pl.' 56.1 Stmt. ¶¶ 2-3, 66-67; Ceparano Aff. ¶¶ 14-15).

On September 17, 2007, plaintiff was seen by Butkos in the Jail Medical Unit ("JMU") at S.C.C.F. as part of the regular intake examination. (Pl.' 56.1 Stmt. ¶¶ 5, 68). Butkos inquired as to his medical condition and plaintiff told Butkos about the treatment he had received following the June 2007 accident from Dr. Rogachefsky. (Defs.' 56.1 Stmt. ¶¶ 6-7). Plaintiff also told Butkos that he was taking Vicodin for lower back pain. (Pl.' 56.1 Stmt. ¶ 8). Butkos prescribed Tylenol for plaintiff's pain. (*Id.* at ¶ 12).

---

[6] On December 21, 2006, Dr. Shapiro recommended lumbar fusion at the "L5/1 level" and formally requested compensation authorization for the procedure. (Wityk Decl., Ex. G at P00000414). On February 1, 2007, Dr. Shapiro saw plaintiff for a follow up appointment, and requested compensation authorization for lumbar fusion surgery at two levels – L4/L5 and L5/S1. (*Id.* at P00000417).

[7] Defendant pleaded guilty to, and was convicted of, manslaughter in the second degree, vehicular manslaughter in the second degree, operating a motor vehicle under the influence of drugs, reckless driving, failure to stay in a designated lane, and aggravated unlicensed operation of a motor vehicle in the third degree. *See People v. Ceparano*, 96 A.D.3d 774, 774, 945 N.Y.S.2d 421 (N.Y. App. Div. 2d Dep't, 2012).

4

According to plaintiff, during the intake examination on September 17, 2007, he "explained to Ms. Butkos that insurance had approved him for fusion surgery and requested that the surgery be scheduled." (*Id.* at ¶ 68). Plaintiff also told Butkos "that he needs emergency surgery for a herniation of the lower back which occurred 5 years ago and he will loose [sic] the function of his lower legs now if he does not get the surgery NOW." (Defs.' Ex. C at 41). Plaintiff alleges that "Butkos informed [him] that Suffolk County would not be paying for his surgery." (Pl.' 56.1 Stmt. ¶ 69). Plaintiff further alleges that "Butkos failed to ask [him] about his back condition and proceeded to recommend a 'conservative' course of treatment without conducting any meaningful examination." (*Id.* at ¶ 6). Plaintiff claims Buktos "did not visually inspect his back, review his records, or order any further tests," and she did not "order an orthopedic consultation." (*Id.* at ¶ 71). While defendants assert that "Butkos did not order an orthopedic consult for the plaintiff's back condition because she did not feel it was medically necessary," plaintiff argues that Butkos' decision was "based on considerations of cost." (*Id.* at ¶ 35).[8]

On September 18, 2007, Butkos called Dr. Rogachefsky's office regarding the plaintiff and was informed that plaintiff "was cut off" from the use of Vicodin. (Pl.' 56.1 Stmt. ¶ 9; Defs.' 56.1 Stmt. ¶ 10). However, plaintiff alleges that he only took Vicodin for his back

---

[8] Plaintiff also alleges that other JMU employees indicated that the County would not pay for his surgery. Specifically, plaintiff asserts that in October 2007, Dr. Roginsky "told him he could not have [his] operation while incarcerated at S.C.C.F.," and that in September 2008, Dr. Prentiss "asked why he, as a taxpayer, should have to pay for [plaintiff's] treatment when [plaintiff] was incarcerated because he had committed a crime" and that plaintiff could "pay for the surgery himself" after he was released. (Pl.' 56.1 Stmt. ¶¶ 77-78). However, this claim is belied by the fact that in July 2009, plaintiff was referred by medical personnel at S.C.C.F. to Dr. Gregory Dalencourt for treatment of a skin growth in plaintiff's groin area. (Pl.' 56.1 Stmt. ¶¶ 38-39). Plaintiff's skin lesion was treated by surgical excision, which plaintiff does not deny was paid for by the jail. (Defs.' Ex. B, at 57-58; Defs.' Ex. E).

pain, which was prescribed to him by his orthopedist, Dr. Shapiro, and not Dr. Rogachefsky.[9] (Pl.' 56.1 Stmt. ¶ 10). Plaintiff claims that he told Butkos that "his doctor prescribed him Vicodin to manage his pain," but she told him that "she knew he had a drug problem and that he just wanted the Vicodin to 'get high.'" (Id. at ¶ 72).

According to plaintiff, he "asked Ms. Butkos to order his medical records from Dr. Shapiro so that she could see documentation of his pain management regimen, but she refused to order the records." (Pl.' 56.1 Stmt. ¶ 73). However, plaintiff admits that he gave Butkos the wrong contact address for Dr. Shapiro. (Id. at ¶ 20).

Between September 17, 2007 and October 23, 2009, plaintiff visited the JMU and was seen by Butkos on at least ten occasions. (Pl.' 56.1 Stmt. ¶¶ 17, 21-22; Defs.' Ex. C). Butkos prescribed stretching exercises to treat plaintiff's back condition and provided plaintiff with a list of these exercises. (Pl.' 56.1 Stmt. ¶¶ 23-25). Although plaintiff claims that he was initially unable to perform the exercises,[10] he admits that "[t]here came a time while at [S.C.C.F.] that plaintiff's medical condition improved to the point that he could," and did, "do the exercises prescribed by Butkos." (Id. at ¶¶ 36-37). Butkos also arranged for plaintiff to receive an extra blanket and authorized weight checks for six weeks. (Id. at ¶¶ 30-31). Defendants claim that Butkos also prescribed moist heat alternating with ice, which plaintiff denies, (Id. at ¶ 30), and prescribed Flexeril and Naprosyn for plaintiff's back pain, which plaintiff refused.[11] (Defs.' 56.1

---

[9]  Although plaintiff alleges that he explained to Butkos that "Dr. Rogachefsky had provided him with emergency surgery and provided follow-up treatment on his knee injury only" and that "Dr. Shapiro provided him with treatment for his back," (Pl.' 56.1 Stmt. ¶ 7), Butkos claims to have been unaware that Dr. Rogachefsky treated plaintiff only for his knee injury. (Defs.' 56.1 Stmt. ¶ 11).

[10]  According to plaintiff, Butkos sent this list of exercises to plaintiff's cell but did not provide instructions as to how plaintiff could perform the exercises while on crutches. (Pl.' 56.1 Stmt. ¶ 25).

[11]  Plaintiff does not deny that he declined these medications because he "had taken [them] in the past" and they "had not helped [his] condition," (Ceparano Aff. ¶ 22), but he also contends that he never

Stmt. ¶¶ 26-27). Plaintiff does not dispute that on March 4, 2008, he told Butkos "he did not need medication at that time but also asked if he needed pain medication in the future would he get." (Pl.' 56.1 Stmt. ¶ 33).

On October 23, 2009, plaintiff was transferred from S.C.C.F. to a state prison facility where he was incarcerated for over three years. (Pl.' 56.1 Stmt. ¶¶ 17, 42). Plaintiff informed the medical professionals at the state facility about his back injury and was treated with muscle relaxants and pain killers. (*Id.* at ¶¶ 43-45). Plaintiff did not have an orthopedic consultation or receive an operation while incarcerated in the state system. (*Id.* at ¶ 46; Ceparano Aff. ¶ 39).

Plaintiff presently takes Oxycontin up to three times a day for pain. (Pl. 56.1 Stmt. ¶¶ 83-84). Plaintiff was scheduled for lumbar fusion surgery on August 30, 2013. (Pl.' 56.1 Stmt. ¶¶ 83, 85).

II. Discussion

A. Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for

---

received these medications and was unaware that they had been prescribed. (Pl.' 56.1 Stmt. ¶¶ 26-27, 75). According to plaintiff, he "repeatedly asked Ms. Butkos for pain medication," but she "repeatedly ignored his requests." (*Id.* at ¶ 76). Defendants contend that "[a]t no time did Nurse Butkos refuse to provide medication to the plaintiff." (Defs.' 56.1 Stmt. ¶ 29).

7

trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (quotation marks and citation omitted); *see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012)

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. In order to defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted).

"Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule 56.1(a), (d)). "If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Id.* (citing Local Rule 56.1(c)). The facts set forth in each Local Rule 56.1 statement "must be followed by citation to evidence which would

be admissible." Local Rule 56.1(d). "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [Rule 56.1] Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citations omitted).

B. Individual Liability

Plaintiff's claim that Butkos denied him adequate medical care in violation of his constitutional rights[12] requires a showing of "deliberate indifference to [a prisoner's] medical needs." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The test for deliberate indifference to medical needs has both an objective and a subjective component. *Callazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *Hill*, 657 F.3d at 122.

i. The Objective Element of Deliberate Indifference

To satisfy the objective element of deliberate indifference, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hill*, 657 F.3d at 122 (quoting *Hathaway*, 99 F.3d at 553). In order to determine whether an alleged deprivation of medical care was objectively serious, the court must inquire whether (1) the inmate was "actually deprived of adequate medical care," and (2) "the inadequacy in medical care [was] sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 266 (2d Cir. 2006).

"[T]he prison official's duty is only to provide reasonable care." *Id.* at 279 (citing

---

[12] Because plaintiff was a pre-trial detainee at the time of the events alleged in the complaint, plaintiff's claim is analyzed under the Due Process Clause of the Fourteenth Amendment. *Caiozzo v. Koreman*, 501 F.3d 63, 69-70 (2d Cir. 2009) (applying test for deliberate indifference under the Eighth Amendment to claims brought by state detainees under the Fourteenth Amendment).

9

*Farmer v. Brennan*, 511 U.S. 825, 844-47, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Thus, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *see also Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) (summary order). "[M]ere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703; *see also Allah v. Michael*, No. 11–1475–pr, 2012 WL 6633977, at *2 (2d Cir. Dec. 21, 2012) (summary order). "[T]he essential test is one of medical necessity and not one simply of desirability." *Hill*, 657 F.3d at 123 (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).

Plaintiff has failed to establish that he received inadequate medical care from Butkos. It is undisputed that plaintiff was seen by Butkos at the JMU on at least ten occasions, Butkos prescribed Tylenol for plaintiff's pain, and also prescribed back stretching exercises to treat plaintiff's back condition, which plaintiff conceded relieved his pain. Butkos' decision not to order an orthopedic consultation for plaintiff was a medical judgment, the reasonableness of which is further highlighted by the facts that plaintiff's condition eventually improved to the point where he could perform the prescribed exercises and he no longer needed pain medication, and that he did apparently did not seek, and did not receive, an orthopedic consultation or surgical intervention while incarcerated in a state facility for three (3) additional years. Thus, there was no urgency and there was no inadequacy of treatment, much less a serious inadequacy.

At most, the facts demonstrate that plaintiff disagreed with the treatment prescribed by Butkos. *See, e.g., Bolden v. Cnty. of Sullivan*, No. 11-4337, 2013 WL 1859231, at *2 (2d Cir. May 6, 2013) (summary order) (affirming summary judgment where the plaintiff "simply disagree[d] with the medical judgment of the County Jail medical staff regarding the

10

proper course of treatment during her incarceration"); *Hill*, 657 F.3d at 123 ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."); *Hernandez v. Keane*, 341 F.3d 137, 146–47 (2d Cir. 2003) (holding that an issue of medical judgment, i.e., whether or not to provide specific treatment, "cannot form the basis of a deliberate indifference claim"); *Palacio v. Ocasio,* No. 02 Civ. 6726, 2006 WL 2372250, at *11 (S.D.N.Y. Aug. 11, 2006), *aff'd,* 345 F. App'x 668 (2d Cir. 2009) (holding that "a disagreement over the proper treatment," i.e., a challenge to the adequacy of the medication given to treat the plaintiff's pain, does not support a constitutional claim); *Reyes v. Cardener*, 93 F. App'x 283, 284 (2d Cir. 2004) (summary order) (affirming summary judgment where plaintiff disagreed with "defendants' decision to prescribe medication conservatively rather than order Demerol when he first reported pain").

      ii.    The Subjective Element of Deliberate Indifference

"Subjectively, the official must have acted with the requisite state of mind." *Collazo*, 656 F.3d at 135 (quoting *Hathaway*, 99 F.3d at 553); *see also Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind"). "In order to show than an individual was deliberately indifferent to the plaintiff's serious medical needs, the plaintiff must show (1) that '[the individual] knew of a substantial risk of serious harm to [plaintiff's] health,' and (2) that '[the individual] consciously disregarded that risk." *Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 507-08 (2d Cir. 2012) (quoting *Hathaway*, 99 F.3d at 553).

Plaintiff has failed to establish that Butkos knew of and substantially disregarded a known risk of serious harm to his health. Plaintiff submits no evidence other than his own unsupported conclusion which could support a finding of substantial disregard for his health.

*See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (affirming summary judgment where "[m]ost of the evidence offered by the plaintiff was in support of the argument that [defendant] *should* have been aware that [plaintiff] was in immediate danger" and there was "virtually no evidence . . . to support a conclusion of a reasonable juror that [defendant] was actually aware of that immediate danger"); *Thompson v. Pallito*, No. 12-cv-225, 2013 WL 2393109, at *15 (D.Vt. May 29, 2013) (dismissing deliberate indifference claim because "none of the allegations in [plaintiff's complaint] indicate that any of [the defendants] acted with a sufficiently culpable state of mind as to the risks associated with [plaintiff's] condition and treatment"); *Gelsomino v. Med. & Psych. Dep't at Suffolk Cnty. Corr. Facility*, No. 13-CV-1433, 2013 WL 2285756, at *6 (E.D.N.Y. May 20, 2013) (holding that plaintiff's "complaint does not state a plausible claim . . . premised upon a deliberate indifference to medical needs theory because, *inter alia*, there are no factual allegations to support a reasonable inference that [defendant] acted with the requisite state of mind"); *Bolden v. Cnty. of Sullivan*, No. 10 Civ. 3514, 2011 WL 4136821, at *2 (S.D.N.Y. Sept. 15, 2011) (dismissing deliberate indifference claim where allegations do "not support an inference that there was a failure to administer any drug, and a probability that the omission caused [plaintiff serious harm]").

C. Municipal Liability

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). In order to prevail on such a claim against a municipal defendant, the plaintiff must establish as a prerequisite an underlying constitutional violation on the part of individual municipal actors. *See Segal v. City*

*of N.Y.*, 459 F.3d 207, 219 (*Monell* "*extends* liability to a municipal organization where . . . the policies or customs that [the organization] sanctioned, led to an independent constitutional violation."); *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (same). Plaintiff has failed to establish that Butkos provided constitutionally inadequate medical care. Accordingly, plaintiff has not demonstrated an underlying constitutional violation to which *Monell* liability can extend.

Furthermore, plaintiff has presented no admissible evidence that the County has a custom or policy to deny treatment in order to save money or that such a policy or custom caused him to receive inadequate medical treatment while incarcerated at S.C.C.F. "The evidence proffered by the party opposing summary judgment must be of a type that would be admissible at trial." *Greene v. Brentwood Union Free School. Dist.*, No. 11-CV-4308, 2013 WL 4432357, at *2 (E.D.N.Y. Aug. 13, 2013) (internal quotation marks and citation omitted); *see also Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1986) ("[The non-moving party] cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial.") (citations omitted). To support his claim, plaintiff relies upon (1) statements that medical providers at S.C.C.F. told him he would not receive surgery because of cost, and (2) an affidavit of Dr. Patricia Dillon submitted in an unrelated litigation against the County. This evidence is inadmissible hearsay and may not be considered on summary judgment. *See Feingold v. New York*, 366 F.3d 138, 155 n.17 (2d Cir. 2004); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 222 (2d Cir. 2004). Additionally, plaintiff's contention that it was the custom or policy of the County to deny surgical treatment in order to save money is belied by plaintiff's own admission that medical personnel at S.C.C.F. referred him to an outside physician and paid for the surgical excision of a skin legion.

III. Conclusion

Since plaintiff has not established an underlying constitutional violation or that an official policy or custom caused him to suffer a constitutional injury, defendants' motion seeking summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56 is granted. Plaintiff's complaint is dismissed in its entirety with prejudice.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: December 4, 2013
      Central Islip, New York